UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-MJ-4616-D'ANGELO

UNITED STATES OF AMERICA,

vs.

ALON ALEXANDER,
_____/

**ALON ALEXANDER'S RESPONSE TO
[DE 16] GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTIONS FOR PRETRIAL RELEASE**

On Monday, December 30, 2024, the court recessed the detention hearing until January 3, 2025, to allow Alon to present additional information about the home confinement option that Alon has proposed.

Since then, Alon's counsel has identified for the government a 2-bedroom apartment in Miami-Dade County (address provided to prosecutors) that is immediately available to house Alon during the period of pretrial release.

V2 Global, the private security company that is immediately available to monitor Alon's compliance with the condition of home confinement, visited the apartment and prepared a site assessment (also provided to the government), which explains that the building (no water-frontage) is within a complex accessed through a manned security gate; access to the 8th floor unit is via a single door; the 1,157 square foot unit is a basic 2-bedroom apartment with a living/dining area leading to a screened balcony; from the living area, there is a primary bedroom, a secondary

1

bedroom and a galley kitchen. See **Exhibit 1** (address and external site photographs redacted).

V2 Global also prepared a security plan (also provided to the government) regarding the procedures and protocol that can be implemented, addressing contact with law enforcement authorities, staffing, technology, the monitoring post, and movements. See **Exhibit 2**.

This morning, counsel for Alon Alexander conferred by Zoom with the prosecution team. On the call were the following members of the V2 Global team consulting on this matter:

- ***Donald De Lucca*** – V2 founding partner; retired Chief of Police with 33 years of law enforcement experience.
- ***DC Page*** – Managing Partner V2; retired US Customs (now Homeland Security), Managing Director Kroll Associates, CEO of Verasys, and directed all consulting and international operations for Andrews International.
- ***George Piro*** – V2 Member of Board of Advisors, Executive Director for Domestic and International Operations; retired FBI Assistant Director of International Operations and Special Agent in Charge of the FBI's Miami office.
- ***Michael Mills*** – Director of Field Operations; retired Assistant Chief South Miami Police Department, with 34 years law enforcement experience, experience managing high-profile, flight risk security details.

The prosecution team asked, and the V2 Global team answered, questions about the site and the security plan.

Michael Mills informed the prosecution team that he was on the home confinement team that monitored the foreign national (Paraguay) indicted in the FIFA corruption case, who resided in Miami pending trial in *United States v. Juan Napout*, No. 15-cr-00252 (EDNY). See **Exhibit 3**, Order on 12/16/2015 releasing the

defendant on home confinement (*Napout,* DE 127); See **Exhibit 4**, Transcript of 12/15/15 detention hearing (*Napout,* DE 186).

For his part, DC Page oversaw the entire *Napout* operation as the managing director.

V2 Global advised the prosecution team that it successfully transported the Napout from Miami to New York for court proceedings, and can do the same in Alon's case. While in New York, Alon could reside at the 2-bedroom apartment of his brother Tal, which is at an address known to the government; it also has a single entry, but no balcony. Alon can remain in the New York apartment for the duration of the case, if the court prefers.

V2 Global advised the prosecution team that it is prepared to liaison with the FBI agents assigned to the Alexander case and obey the commands of the court subject to penalty of contempt.

V2 Global also advised that it can enforce any restriction on visitation, limiting the visitor list to only those persons pre-approved by the court (perhaps his parents, wife, children and attorneys).

Nevertheless, the government advised that it continues to seek pretrial detention, filing a supplemental memorandum [DE 16] attacking the use of private security guards generally. But the Second Circuit has approved private security guards as an additional safeguard for pretrial release where, as here, "the defendant is deemed to be a flight risk primarily *because of* his wealth." *Untied States v. Boustani*, 932 F.3d 79, 82 (2d. Cir. 2019) ("[T]he private-security condition we

described in *Sabhnani* may be appropriate where the defendant is deemed to be a flight risk primarily *because of* his wealth.  In other words, a defendant may be released on such a condition only where, *but for* his wealth, he would not have been detained."); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d. Cir. 2007) (holding that a court may release a defendant subject to conditions of home confinement in which, among other things, the defendant pays for private armed security guards). See also *United States v. Ludwigsen*, 99-MJ-03801-JJO (S.D. Fla. 1999), where the defendant was arrested in the Southern District of Florida on an indictment charging racketeering (murder) conspiracy in the Eastern District of New York.  Magistrate Judge Bandstra (S.D. Fla.) denied the government's motion to detain the defendant, and the Eastern District of New York affirmed, setting conditions including a multi-million-dollar personal surety bond; surrender of passport; house arrest; *and a private security guard to monitor all entries into and exits from the home. United States v. Ludwigsen*, 99-cr-520-ERK, DE 207, 236, 304 (E.D.N.Y. 1999).

It bears repeating that the singular objective of the court is to determine whether it can fashion conditions to assure the safety of the community and appearance in court—not to punish the defendant before trial. The fact that family members have the financial ability to provide the court with additional assurances of compliance through a private security guard should not be demonized. Rather, given the conditions at MDC Brooklyn, the government should be receptive, not hostile, to the offer of a defendant, through his family's legitimately-earned resources, to relieve the BOP of the burden of detaining (for regulatory purposes only) one more pretrial

4

detainee, particularly in a "dangerous and barbaric," "dreadful" place like MDC Brooklyn, where at least four inmates have died by suicide in the past three years and an inmate was murdered this summer. See *United States v. Colucci,* 23-CR-417 (E.D.N.Y., Aug. 5, 2024) (DE 13: In an August decision, EDNY district court judge cited the "dangerous, barbaric conditions" at MDC Brooklyn and imposed an unprecedented sentence: a prison sentence at a BOP facility, unless that facility is MDC, in which case the sentence would be converted to home confinement with electronic monitoring); *United States v. Chavez*, 22-CR-303 (JMF) (S.D.N.Y., Jan. 4, 2024) (DE 30: In January, the Court described the conditions at MDC as "dreadful" and "longstanding" and noted that the issues with food contamination and hazardous physical conditions were an "ongoing tragedy"); *United States v. Morgan*, 19-CR-209 (RMB) (S.D.N.Y., May 5, 2020) (DE 90, Tr. 12-15: Court described MDC as "dirty," "infested with drugs," and plagued by violence).[1]

        Respectfully submitted,

        **BLACK SREBNICK**
        201 South Biscayne Boulevard, Suite 1300
        Miami, Florida 33131
        Tel. (305) 371-6421

        /s/ *Howard Srebnick*
        HOWARD SREBNICK
        Florida Bar No. 919063
        E-mail: HSrebnick@RoyBlack.com

---

[1] https://apnews.com/article/sean-combs-diddy-federal-prisons-jails-mdc-brooklyn-8c910839adf3ac54a8adc8d7cb3f0b79; https://www.nydailynews.com/2024/06/20/inmate-at-brooklyns-troubled-metropolitan-detention-center-is-stabbed-to-death-sources/